UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Polaris Industries, Inc.,

       Plaintiff,

v.                                                                                         Civil No. 10-4362 (JNE/HB)
                                                                                           ORDER
CFMOTO Powersports, Inc., CFMOTO
America, Inc., John T. O'Mara & Angela M.
O'Mara, d/b/a Quad Central MotorSports, and
Leo's Kawasaki Sales South, Inc.,

       Defendants.

      Plaintiff Polaris Industries, Inc. brought this action alleging, among other things, patent

infringement by CFMOTO Powersports, Inc. and the other defendants (collectively,

"Defendants").  Specifically, Polaris alleges that Defendants violated three of its patents relating

to side-by-side all-terrain vehicles ("ATVs"): United States Patent Nos. 7,819,220 ("the '220

patent"), 8,382,125 ("the '125 patent"), and 8,596,405 ("the '405 patent").  The parties each filed

*Markman* briefs and other submissions in support of their respective positions on whether and

how the Court should construe certain patent terms. Dkt. Nos. 167, 169.  By order of reference

from this Court, *see* Dkt. No. 161, the Honorable Hildy Bowbeer, United States Magistrate

Judge, after holding a claim construction hearing and considering the parties' submissions,

issued a Report and Recommendation on December 23, 2015 concerning claim construction of

the disputed terms [Dkt. No. 219] ("R&R").  Magistrate Judge Bowbeer recommended

constructions of five terms and that no construction was necessary for five additional terms.

Defendants objected to the Report and Recommendation, and Polaris responded.  Defendants and

Polaris then each submitted a supplemental letter.  Dkt. Nos. 227, 228.

The Court has conducted a de novo review of the record and adopts in part the reasoning and conclusions of the Report and Recommendation, as set forth below.  The following discussion corresponds to the organization of the Report and Recommendation.

### A.      Claim Construction Principles

The Court makes the following clarification regarding the role of the patent specification in a court's claim construction.  After the Report and Recommendation was issued, the Federal Circuit emphasized that although claim construction begins with a consideration of the language of the claims themselves, "[t]he specification is the 'single best guide to the meaning of a disputed term,' . . . and 'is, thus, the primary basis for construing the claims." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, No. 2015-1146, --- F.3d ---, 2016 WL 386068, at *2 (Fed. Cir. Feb. 2, 2016) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Circ. 1996), and *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)).  Moreover, "a claim term may be clearly redefined without an explicit statement of redefinition" and "[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Id.* at *3 (quoting *Phillips*, 415 F.3d at 1320-21).

### B.      Claim Construction

### 1.      "all-terrain vehicle"

The Report and Recommendation determined that the phrase "all-terrain vehicle," which appears in the preamble of each of the three patents at issue, should be construed as a claim limitation because of the repeated references to "all-terrain vehicle" in the patents' specification and because Polaris relied on the limiting context of the "all-terrain vehicle" during prosecution to distinguish prior art.  R&R 6-10.  The Court agrees. *See, e.g.*, *Deere & Co. v. Bush Hog, LLC*,

703 F.3d 1349, 1357-58 (Fed. Cir. 2012); *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1347

(Fed. Cir. 2002); *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808

(Fed. Cir. 2002).

Defendants assert that the "primary error" of the Report and Recommendation with

regard to this term was its "failure to analyze the body of the claim to determine if a structurally

complete invention was being defined." Def.'s Objs. 2-3, Dkt. No. 221. Defendants argue that if

a patentee defines a structurally complete invention in the body of the claim, and the preamble

merely states a purpose or intended use for the invention, then a preamble is not limiting. *Id.* at

1-3. Here, however, as in *Deere*, the use of the disputed term in the preamble does not merely

state a purpose or intended use, but rather is "'necessary to give life, meaning, and vitality' to the

claim[s]," as demonstrated by the repeated references to the invention as an "all-terrain vehicle"

or ATV in the specification and as underscored by the prosecution history. *Deere*, 703 F.3d at

1357-58 (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir.

1999)); R&R 8-10; *see also Symantec*, 2016 WL 386068, at *8 (finding that where the patentee

had attempted to distinguish some prior art, the position it took in that prosecution history

confirmed the conclusion that the specification was limiting). The cases Defendants cite do not

compel a different conclusion. For example, unlike in *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d

1289, 1295-96 (Fed. Cir. 2004), in which the prosecution history did not clearly rely on the

disputed preamble term, or in *Marrin v. Griffin*, 599 F.3d 1290, 1294 (Fed. Cir. 2010), in which

the patentee expressly stated during prosecution that the disputed language was not limiting, the

specification for the '220, '125, '405 patents clearly and repeatedly characterizes the invention as

relating to all-terrain vehicle(s), and—importantly—Polaris sought to overcome prior art as not

relating to an all-terrain vehicle. R&R 9-10; *see also* Bullard Decl. Ex. E at A1022, A1024, Dkt.

No. 168-7 (attempting to distinguish the DeMonclin prior art on the grounds that "one of skill in the art would not be led to take an engine that is suitable for a garbage truck [*i.e.*, the DeMonclin engine] and place it in a small and nimble personal all-terrain vehicle"); *see also id.* at A1164 (arguing that the Smirl prior art was not analogous: "Applicant has previously discussed the impropriety of applying on-road car horsepower/pound ratios *to off-road ATV's* [sic]") (emphasis added).

Although Defendants objected to the recommendation that the Court construe "all-terrain vehicle" as a claim limitation, they did not object to the construction proposed by the Report and Recommendation.  The Court adopts the Report and Recommendation's proposed construction:

> a vehicle, primarily for off-road use, that is capable of being driven over a variety of off-road surfaces, inclines, and rough terrains

### 2.   "front frame portion, a mid frame portion and a rear frame portion"

The Magistrate Judge recommended no construction of this disputed term.  Defendants objected to this recommendation on the grounds that the "front frame portion," "mid frame portion," and "rear frame portion" are set and distinct areas on the frame, as opposed to referring to relative locations, and that "frame" must be defined as being made up of "relatively slender pieces called 'rails', 'members' and 'tubes'."  Defs.' Objs. 7.  The Court adopts the reasoning and conclusion of the Report and Recommendation.  R&R 16-24.

The Court agrees that a jury (as well as a person having ordinary skill in the art) is capable of identifying each component, associating it with a portion of the frame, and understanding the spatial positioning of what is front, mid, and rear, particularly in light of other claim language concerning spatial positioning.  For example, a juror reading "a seating area supported by the mid frame portion" and "an engine supported by the rear frame portion, the engine positioned rearwardly of the seating area," would be able to comprehend that in order for

the rear frame portion to support an engine "rearward[] of the seating area," the rear frame portion must be rearward of the mid frame portion that supports the seating area.  Bullard Decl. Ex. A ('220 patent, col. 11, ll. 9, 12-13), Dkt. No. 168-1.

The Court is also unpersuaded by Defendants' rebuttal to the Magistrate Judge's finding that Defendants' proposed construction would read out the preferred embodiment.  *See* Defs.' Objs. 12-14; R&R 22.  Defendants ask the Court to construe "rear frame portion" as starting at the forwardmost part of the rear wheels.  Defendants assert that a bracket mounted to rail 75 is "NOT rearward of the seating area" because they are "under the respective driver's side and passenger's side seat backs."  Defs.' Objs. 13-14.  But the specification describes a "portion of frame" like rail 75 that is located "between mid cross-member 73 and rear crossmember 77" as "support[ing] modular engine assembly 34" of the ATV.  Bullard Decl. Ex. A ('220 patent, Col. 5, ll. 66 – Col. 6, *l.* 1); *see also* Defs.' Objs. 13 (annotated excerpt of Fig. 15).  And the "engine [is] supported by the rear frame portion," and "positioned rearwardly of the seating area."  *Id.* Ex. A ('220 patent, col. 11, ll. 12-13).  Defendants cite nothing that undermines the clear import that the engine mounts *are* part of the rear frame portion and *are* rearward of the seating area, even if they are forward of the rear wheels.  Defendants' proposal, however, would mean that rail 75 is part of the "mid frame portion," contrary to the patent claims.

With regard to the rails, members, and tubes, Defendants' characterization of *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999), is unavailing.  Similar to the facts of that case, the term "frame" does not lack clarity as used in the patents, and Polaris did not clearly redefine or limit the term "frame" in the specification.  *Id.* at 990-91; *compare with Symantec*, 2016 WL 386068, at *3 ("[W]hen the scope of the invention is *clearly stated* in the specification, and *is described as the advantage and distinction* of the invention, it is not

5

necessary to disavow explicitly a different scope.") (quoting *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006)) (emphasis added).  Defendants assert that a frame "has a characteristic shape" in "virtually all four wheel vehicles," Defs.' Br. 12, Dkt. No. 169, thereby indicating that it is a familiar and understandable term.  Moreover, Polaris did not clearly redefine or limit the term "frame" in the specification simply by describing certain components (*e.g.*, rails) that were used in the preferred embodiment to form the frame.  *See, e.g.*, *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1328 (Fed. Cir. 2012) (finding that the specification "does not purport to describe the limits of the invention as a whole" and "does not clearly restrict the scope of the invention").

> ### 3.    "supported by the rear frame portion"

The Report and Recommendation construed this term as:

---

[component] is carried in whole or in significant part by the rear frame portion

---

Defendants objected that this construction "errs in looking at where weight is 'carried', rather than by looking at the location of a component[']s support(s) relative to the frame," and by not imposing a requirement that the component have "a connection" to or be "connected to" the rear frame.  Defs.' Objs. 14-15.  The Court adopts the reasoning and conclusion of the Report and Recommendation, R&R 24-31, and notes as further support that the Patent Trial and Appeal Board ("PTAB") adopted a similar construction of "supported by" in the '405 patent: "all or part of the weight being carried by."  Shewchuk Ltr. (Feb. 5, 2016) Ex. 1, at 7, Dkt. No. 227-1.

> ### 4.    "front drive shaft" and "rear drive shaft"

The Report and Recommendation construed the term "drive shaft" as "including any connecting hardware (*e.g.*, universal joints, couplers and bearings)."  Defendants objected that

the correct construction is that a shaft "is an undampened rotating straight bar" that "does not include the universal joint, the coupler, or the output shaft of the transmission."  Defs.' Objs. 18.

Defendants argue that the Report and Recommendation mistakenly held that the front drive shaft must be construed as including the universal joint (or "U-joint") and coupler labeled in the patents' specification as parts 144 and 142, respectively, in order to cover the preferred embodiment.  Defs.' Objs. 18-20.  Defendants present an annotated copy of the patents' Figure 9, which they claim shows that the "front drive shaft 146" mentioned in the specification does extend fully from the transmission to the front differential as required by, *e.g.*, independent claim 1 of the '220 patent.  In Defendants' annotation, replicated in part below with an added red marking for emphasis, the green front drive shaft 146 touches what they characterize as the transmission in blue.  Defendants do not cite any authority for their application of blue shading to delineate the shape of the transmission, and in particular offer no support for their extension of the blue shading in the portion of the diagram outlined in red by the Court below.  Their shading, in fact, contradicts the Magistrate Judge's identification of the transmission in Figure 9 as shown on page 63 of the Report and Recommendation, an annotation to which Defendants did not specifically object.  For comparison, copies are included below.  In addition, Defendants' annotations of Figure 9 as shown below are inconsistent with another of their annotations of the same drawing in their opening *Markman* brief.  *See* Defs.' Br. 25 (shading in yellow what they characterize as the transmission belt cover, with the yellow shading stopping short of the forwardmost blue shading in their objections).

(*see* figures on next page)



| Defendants' Objections' Annotation | Report and Recommendation's Annotation |
|---|---|
| **FIG. 9**<br>(with red ∿ added by the Court) | **FIG. 9**<br>(noting that "the transmission is the component identified by the purple arrow because the blue output shaft, on which the parties agree, extends outward from the transmission") |

Defs.' Objs. 19; R&R 63 & n.22.

Defendants' annotated Figure 9 therefore does not alter the Court's agreement with the Magistrate Judge's thorough analysis of patents' drawings, the language of the patents' specification, and the claim term "a front drive shaft extending between the transmission and the front axle assembly for coupling the transmission to the front wheels." *See* R&R 31-37. The intrinsic evidence, supported as well by extrinsic evidence, shows that the front drive shaft must be construed as including connecting componentry such as joints and couplers in order to "extend[] between the transmission and the front differential for coupling the transmission to the

wheels," as depicted in Figure 9 of the specification.[1]   Defendants' proposed construction would read the preferred embodiment out of the claims, and such an interpretation "is rarely, if ever, correct."  *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015); *InterDigital*, 690 F.3d at 1327 (quoting *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005), and *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

Defendants also contest the Magistrate Judge's analysis of the Hickey prior art.  They assert that Polaris' highlighting of drawings of the Hickey prior art shows that Polaris disclaimed related componentry from its definition of drive shaft.  *See* Defs.' Objs. 22-23.  The Court agrees with the Report and Recommendation's discussion of the prior art, R&R 35-36, but takes the opportunity to clarify one point.  Polaris' treatment of the Hickey prior art in the Arctic Cat *inter partes* reexamination makes clear that a "drive shaft" does not include differentials, including interaxle differentials.  Shewchuk Decl. Ex. 25, at 20, Dkt. No. 174-2 ("the interaxle differential displaces the front drive shaft . . . from the transmission").  This interpretation is consistent with the language of the '220, '125, and '405 patent claims themselves, which state that, *e.g.*, the drive shaft "extend[s] between the transmission and the [front or rear] differential . . . ."  Bullard Decl. Ex. A ('220 patent Col. 11, ll. 23-4).  Because a juror might not know the difference between components like joints and differentials, the Court will add a clarifying remark in its construction of the term "drive shaft" (*see infra*) to "ensure that the jury fully understands" that connecting hardware does not include differentials.  *Power-One, Inc. v. Artesyn Techs., Inc.*, 599

---

[1] The Court notes, as additional support, that the prosecution history for the '220 patent indicates that the examiner understood "drive shaft" to include at least a coupler.  Bullard Decl. Ex. D, at A0247-48, Dkt. No. 168-4 (describing the Horiuchi prior art as anticipating the '220 patent in view of Nash because "Nash teaches a transmission including a splined output shaft (248), and *the driveshaft including a coupler* (236) adapted to operably couple with the splined output shaft") (emphasis added).

F.3d 1343, 1348 (Fed. Cir. 2010) (quoting *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004)).

Defendants also note that in the same *inter partes* proceeding, the PTAB construed the term "drive shaft" to mean "a shaft structure that transmits torque, and *excludes other hardware*, such as universal joints, couplers, bearings, and interaxle differentials." Shewchuk Ltr. (Feb. 5, 2016) Ex. 2, at 9, Dkt. No. 227-2 (emphasis added). In its decision, however, the PTAB characterized both of the proposed constructions (including hardware and excluding it) as "reasonable" and applied its rule that "[w]hen considering two reasonable constructions, one narrower and one broader, we generally apply the broader of two reasonable constructions" in order to choose the excluding-hardware construction. *Id.* at 8. The standard that the PTAB applied does not apply here. Moreover, the PTAB acknowledged that "on closer examination," its adoption of what it characterized as the broader reasonable construction created an "apparent incongruity" between the claim language and the preferred embodiment as depicted in Figure 19 of the specification, when viewed in light of a construction of "extending between" consistent with the construction adopted by this Court below. *Id.* at 11, 13-14. The Court therefore does not view the PTAB's construction of "drive shaft" as persuasive.

In addition, Defendants challenge the Report and Recommendation's conclusion that "drive shaft" did not mean "an undampened rotating straight bar," which relied in part on an interpretation of the '220 patent's prosecution history concerning the Horiuchi prior art. R&R 38. Defendants offer a competing interpretation of that prior art. Defs.' Objs. 21-22. Defendants' interpretation of the Horiuchi prior art, however, only makes sense if the examiner applied Defendants' proposed construction of "extending between," which the Court rejects below. In any event, as discussed next, the Court concludes that the Report and

Recommendation's recommendation is well-reasoned and adequately supported by the record without relying on the prosecution history concerning the Horiuchi prior art. *See* R&R 37-39.

It does not appear that Polaris explicitly or impliedly limited the plain meaning of the term "drive shaft" to mean an "undampened rotating straight bar" (as opposed to multi-part or dampened).[2]  Unlike in, for example, *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149 (Fed. Cir. 2012), the language of the claims themselves does not limit or even suggest so limiting "drive shaft."  And Defendants have not cited any other intrinsic evidence showing that Polaris clearly and unambiguously limited or redefined the claim term to mean what Defendants propose.  Unlike in *Abbott*, for example, the '220, '125, and '405 patents' specification does not "contain[] only disparaging remarks" for multi-part and/or dampened drive shafts—in fact, the specification does not discuss either of these features in connection with drive shafts.  *Id.* at 1149.  Nor does it appear that using only an undampened rotating straight bar as a drive shaft would necessarily accord with the "primary purpose of the invention;" indeed, Defendants do not even contend it.  *See id.*  Nor did Polaris define the term in the specification by—as a hypothetical example—stating that a "drive shaft" was "useful . . . because" of its straight, undampened nature.  *See Symantec*, 2016 WL 386068, at *5 (finding that the patentee redefined the term "byte sequence feature" as the narrower "machine code instructions" by stating twice in the specification that the feature "is useful and informative 'because it represents the machine code in an executable'").  Although in some instances a patentee can impliedly limit a claim term, the record before the Court in this case does not support Defendants' position.

---

[2] In light of the determination that "drive shaft" may be a multi-part drive shaft, it also makes sense to specify that the "connecting hardware" that is included within the concept of a drive shaft may include bearings.  *See, e.g.*, Bullard Decl. Ex. J at A1828 (Fig. 6-3), A1832 (Fig. 6-10), Dkt. No. 168-13 (showing examples of a two-piece drive shaft that is connected by a bearing); *id.* Ex. K at A1851-52, Dkt. No. 168-14.

To summarize, the Court agrees with the Report and Recommendation's construction of drive shaft and adds one clarification to construe "drive shaft" as follows:

> drive shaft, including any connecting hardware (*e.g.*, universal joints, couplers and bearings), but excluding differentials

### 5. "extending between"

The Report and Recommendation construed "extending between" as:

> extending the entire distance between

Defendants did not object to this construction, although they seemingly added a gloss to it that is inconsistent with the Magistrate Judge's reasoning. *Compare* Defs.' Objs. 24, *with* R&R 44. The Court adopts the reasoning and conclusion of the Report and Recommendation as to this term, R&R 40-45, and notes as further support that the PTAB adopted a similar construction of "extending between" in the '405 patent. *See* Shewchuk Ltr. (Feb. 5, 2016) Ex. 2, at 13-14, Dkt. No. 227-2 (construing "a [] drive shaft extending between the transmission and the [] axle assembly" as "requiring that a given drive shaft, and only that given drive shaft, must account for *the entire distance between* the transmission and the respective axle assembly") (emphasis added).

### 6. "protective panel"

The Report and Recommendation construed "protective panel" as "a panel that protects passengers in the ATV from moving parts of the engine assembly, and assists in shielding noise."

Defendants first objected that the "from moving parts of the engine assembly, and assists in shielding noise" part of the construction "imports limitations from the specification that are narrower than a proper construction." Defs.' Objs. 24-25. The Court agrees. Although the '220,

'125, and '405 patents' claims do not specify from *what* the "protective panel" protects, they all claim that it is positioned "between" the seats or seat surfaces and the engine, a placement that plainly implies that the panel is intended to protect the driver and/or passenger from at least the engine. *E.g.*, Bullard Decl. Ex. A ('220 patent, claim 1, col. 11, ll. 29-31), Dkt. No. 168-1; *see also id.* Exs. B & C ('125 patent, claim 7; '405 patent, claim 15). The concept of a panel that protects from the engine is understandable to a person having ordinary skill in the art, as well as to a jury, and should be given its ordinary and customary meaning in this context. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The claims say nothing about what specific engine-related or other hazards the panel is intended to protect from. The patents' specification refers once to the protective panel as "protect[ing] passengers . . . from moving parts of modular engine assembly 34, as well as, assists in shielding from noise." *E.g.*, *id.* Ex. A ('220 patent, Col. 7, ll. 41-45). But this single reference, without more, did not clearly or definitively narrow the scope of the term to the specific hazards of "moving parts" and "noise." *See InterDigital*, 690 F.3d at 1328; *see also* Shewchuk Ltr. (Feb. 5, 2016) Ex. 1, at 30 (PTAB finding with respect to the '405 patent that "an identification of those [particular] hazards or the sufficiency of protection required is not set forth in the claims").

Defendants also objected on the grounds that "[t]he primary reason why the R&R construction is improper is because it does not speak to the transmission belt cover issue," referring to Figure 19 of the patents' specification, in which all parties and the Magistrate Judge agree that a component is mislabeled with the number 134 for "protective panel," when in fact the component in question is the transmission cover. Defs.' Objs. 25; R&R 47. Defendants assert that the mistaken label in Figure 19, unless construed as such by the Court, may confuse the jurors as to what the "protective panel" is. They represent that they "would have no further

objection on this issue" if the Court included in the construction of this term the Magistrate

Judge's explanation of the mislabeling.  Defs.' Objs. 25.  Given the general agreement that

Figure 19 mistakenly—and, one infers, potentially confusingly—labels the transmission cover as

"134," *i.e.* "protective panel 134," the Court concludes that some clarification is needed to aid

the jury's understanding of this term.

> The Court accordingly construes "protective panel" as follows:

---

protective panel, *e.g.*, as depicted as component 134 in Figures 25 and 26 of the
specification, but not the component mistakenly labeled as 134 in Figure 19,

---

### 7.   "positioned between the pair of laterally spaced-apart seating surfaces and the engine"

> The Report and Recommendation concluded that this claim term did not require claim

construction.  Defendants objected, contending that their proposed construction is correct and

necessary: "The protective panel must be positioned behind the pair of seats and in front of the

engine, and cannot be positioned between the front and back edges of the spaced-apart seating

surfaces."  Defs.' Objs. 26, 32.  The Court agrees with the Report and Recommendation's

conclusion that Defendants' construction is unsupported and further agrees that no construction

of the term is necessary, but differs somewhat in its reasoning.

> This claim term appears in the '220 patent, claim 1, lines 29-30, and in the '405 patent,

claim 15, lines 62-63.  Bullard Decl. Exs. A & C, Dkt. Nos. 168-1 & -3.  It also appears in

slightly different form in the '125 patent, claim 20, which claims a protective panel "positioned

between the pair of side by side seats and the engine."  *Id.* Ex. B (col. 13, ll. 8-9), Dkt. No. 168-

2.  The '125 patent also contains a different variation in claims 7 and 37, which claim a

protective panel "positioned between the side by [side] seats and the engine."  *Id.* (col. 11, ll. 63-

64; col. 14, ll. 38-39).  Finally, the only relevant language in the specification for all three patents

states that "[p]rotective panel 134 is positioned behind upper and lower seating surfaces 18a, 18b and 20a, 20b and protects passengers in ATV 10 from moving parts of modular engine assembly 34 . . . ." *E.g.*, *id.* Ex. A ('220 patent, col. 7, ll. 41-44).

The parties' disputes over this term have two parts.  First, Polaris argues that Defendants' proposed construction ("cannot be positioned between the front and back edges of the spaced-apart seating surfaces") would rule out the positioning of a protective panel as in Figure B in the following litigation demonstrative:



*See* R&R 50.  The Court agrees that Defendants' proposed construction would impose such a limitation based on seat "edges" despite the fact that nothing in the claims or specification refers to seat "edges."  Defendants concede in their objections that an interpretation of the claims that would preclude Figure B would be incorrect.  *See* Defs.' Objs. 30.

Defendants' second argument concerns whether "the pair of" seats must be construed as a single entity (which is what they argue) or whether the protective panel could come between each of the two seats while still being positioned "between" the seats and the engine.  *Id.* at 26. The Court concludes that the language of the claim term itself clearly expresses the concept Defendants advance and thus no claim construction is necessary.  Certain claims recite a protective panel "positioned between *the pair of* laterally spaced-apart seating surfaces and the engine" or "positioned between *the pair of* side by side seats and the engine," Bullard Decl. Exs.

A, B & C ('220 patent, claim 1; '125 patent, claim 20; '405 patent, claim 15) (emphasis added), while others claim a protective panel "positioned *between the* side by [side] *seats* and the engine," *id.* Ex. B ('125 patent, claims 7 & 37) (emphasis added).  "[W]hen different words are used in separate claims, they are presumed to have different meanings."  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012).  An analysis of the claims in the context of other claims helps clarify the significance of the different words here.  For example, the '220 patent requires the engine to be "positioned rearwardly of the seating area."  *Id.* Ex. A (claim 1, col. 11, ll. 12-13).  It was in this context that the patent examiner rejected Defendants' arguments regarding the Kalsnes prior art on reexamination, on the following grounds: "[T]his cover [(Kalsnes engine cover 32)] is between the seats and not *between the pair of laterally spaced-apart seating surfaces and the engine*.  The engine in Kalsnes is NOT *positioned rearwardly of the seating area . . . .*"  Shewchuk Decl. Ex. 13 at 6, Dkt. No. 170-13.[3]  In contrast, in the '125 patent, claims 7 and 37 both depend on claims that only require "*at least one cylinder*" of the engine to be "positioned rearwardly of the seating area . . . ."  Bullard Decl. Ex. B (claim 1, col. 11, ll. 35-37; claim 31, col. 14, ll. 8-10) (emphasis added).  If the engine is not

---

[3] An excerpted depiction of the Kalsnes reference at issue is copied here for reference:



Shewchuk Decl. Ex. 23 (Fig. 1), Dkt. No. 170-28.

fully "positioned rearwardly" of the seats, then the protective panel may need to cut between each of the seats as in Kalsnes, severing what would otherwise be "the pair" of seats.  Thus, to the extent that the protective panel severs "the pair" of seats into two separate seats, the claim term in the '220 patent, claim 1, lines 29-30, and in the '405 patent, claim 15, lines 62-63, would not be embodied.  The Court concludes that the use of the phrase "the pair of," viewed in the context of other claim language, clearly expresses this concept, so no construction is necessary.

### 8.    "extends under"

The Report and Recommendation concluded that no construction of this term was required.  The term "extends under" appears in identical claims in each of the patents: "the front driveshaft extends under the protective panel."  Bullard Decl. Exs. A, B & C ('220 patent, claim 1, col. 11, ll. 30-31; '125 patent, claim 21, col. 13, ll. 9-10; '405 patent, claim 16, col. 11, ll. 64-65).  It also appears once in the specification for all three patents: "As shown in FIG. 19, output shaft 138 extends under protective panel 134."  *E.g.*, *id.* Ex. A ('220 patent, col. 7, ll. 40-41).  Defendants objected on two grounds.  First, they argue that the Court must clarify that "extends under" is "more than just elevational" and "requires, when viewed from directly vertically above, that the two parts overlap."  Defs.' Objs. 34.  Second, they contend that in view of different claim language reciting that "the upper rear frame portion at least *partially extends over* at least one of the engine or transmission," "extends under" must be interpreted as extends all the way under another component when viewed from directly vertically above.  *Id.* (referring to, *e.g.*, claim 6 of the '220 patent).

Defendants' first argument appears to be primarily concerned that a juror might interpret "extends under" to cover any component that is beneath another component in purely elevational terms, even if the two components are in completely different parts of the vehicle.  Defs.' Objs.

34.  Polaris does not argue that this purely elevation-based interpretation of the related phrase "extends over" would be correct.  *See* R&R 58-59.  The Court views such a purely elevational interpretation of "extends under" (as opposed to simply "under") as unnatural and strained.  Defendants offer no support for their assertion that such an interpretation is a "plain and ordinary" use of that phrase or is a definition adopted by the patents at issue.  Therefore, the Court agrees with the Report and Recommendation's conclusion that no construction of the phrase "extends under" is needed regarding Defendants' purely elevational argument.

The Court also rejects Defendants' second argument.  The Court agrees with the Report and Recommendation that there is no textual support for Defendants' proposed construction.  *See* R&R 55.  Defendants essentially argue for an application of the doctrine of claim differentiation based on the use of the similar-but-not-identical terms "extends under" and "partially extends over."  Defendants do not convincingly explain, however, why the inclusion of "partially" in one of these two claim terms—which use different words ("under" versus "over") even setting aside the word "partially," and which appear in different claims and different contexts—must inform the meaning of the other term.  The Court finds that the use of the term "extends under" in the specification is not enlightening with regard to this question.  *See* R&R 55.  The Court agrees with the Report and Recommendation's conclusion that no construction of the phrase "extends under" is appropriate concerning Defendants' "partially" argument.

### 9.    "partially extends over"

For the same reasons articulated above with regard to "extends under," and consistent with the Report and Recommendation's analysis of this claim term, R&R 56-60, the Court concludes that no construction is needed.

### 10.   "completely rearward of the seating area"

This disputed term appears only in the '405 patent.  Claim 34 recites "a transmission coupled to the engine, the transmission being completely rearward of the seating area."  Bullard Decl. Ex. C ('405 patent, col. 12, ll. 66-67).  Claim 36 recites that "the seating area is comprised of side-by-side bucket seats having a seat back and a seat bottom."  *Id.* (col. 13, ll. 14-16).  For comparison, another part of claim 34 claims "an engine supported by the rear frame portion, the engine positioned rearwardly of the seating area," *id.* (col. 12, ll. 64-65), and claim 38 claims "[t]he vehicle of claim 34, wherein all portions of the engine are located rearwardly of at least a portion of a seat in the seating area," *id.* (col. 13, ll. 20-22).

The Report and Recommendation concluded that "nothing in the intrinsic or extrinsic evidence [] suggest[s] that the term 'seating area' should be accorded anything other than its plain and ordinary meaning," and that there was also "no reason to accord the term 'completely rearward' anything other than its plain and ordinary meaning."  R&R 67.  Defendants assert in objecting to this conclusion that they "would not object to a construction of 'completely rearward [of] the seating area' as meaning 'when viewed from directly vertically above, rearward of the area actually intended to be occupied by the seated driver and passenger,'" and that they still contend that some construction is necessary.  Defs.' Objs. 36 (emphasis removed).  They offer no new reasoning in support of their objection.

It is clear that the construction Defendants initially proposed, which would draw a line as shown in the below depiction, cannot be correct.  As demonstrated in the Report and Recommendation, such a delineation would read the preferred embodiment out of the claim, without offering any support for why "seating area" should be defined as including the area that the Court has shaded in blue.  R&R 63-64.



FIG. 6

Defs.' Objs. 35 (with blue and green shading added by the Court). The Court thus agrees with

the Report and Recommendation's conclusion that "seating area" is not coterminous with the

outside boundaries of the "cab area" depicted in Figure 6, including all of the side panel shaded

in blue above. *See also* Bullard Decl. Ex. C ('405 patent, Fig. 7 & col. 4, *l.* 63) (identifying "side

panel 52"). It is also not apparent, however, that "seating area" means *only* the "seat back and a

seat bottom," since the patent used the open-ended "comprising" to define "seating area" in

claim 36. *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008). The

prosecution history indicates that Polaris, in attempting to distinguish the Lancia prior art, used

"seating area" synonymous with "the seats." *See* R&R 64-65 (quoting Shewchuk Decl. Ex. 6, at

15, Dkt. No. 170-6). But the claim language leaves open the possibility that "seating area" could

also include more than simply the seat back and seat bottom; for example, it might include the

structure connecting the seat back (18a) and seat bottom (20a) that the Court has shaded in green

in the demonstrative above. The Court thus also agrees with the Magistrate Judge's rejection of

Polaris' proposed construction.

Because the major debate here is whether Defendants' construction—which includes all

shapes in the Figure 6 depiction of the "cab area," including all of the side panel—is correct, and

20

because the Court finds no support in the intrinsic evidence for determining that the "seating area" is the "cab area," the Court concludes it is not necessary to specify for the jury that this unsupported interpretation is not what applies. The Court is not convinced that a jury would apply it. Therefore, the Court agrees that the term "seating area" does not need further construction beyond the definition provided in claim 36.

The Court concludes, however, that some construction of the phrase "completely rearward" is needed. As the Report and Recommendation found, the heart of the dispute over this phrase concerns the fact that the seat back may not be strictly vertical. Where the seat back is tilted back, "the transmission could be completely rearward of the seat *bottom* without being completely rearward of a vertical line running from the rearwardmost point of the seat as a whole." R&R 64. Defendants argue that for the transmission to be "completely rearward" of the seating area, it cannot be located behind part of, yet under another part of, the tilted seats. Polaris argues that if the transmission is fully rearward of the seat bottom, it is "located behind the seats," *i.e.*, "completely rearward" of the seating area. Pl.'s Resp. 27-28, Dkt. No. 177.

The Court finds that, contrary to Polaris' proposed construction, "completely rearward" means "completely rearward of the rearmost portion of another object." The Magistrate Judge also rejected Polaris' proposed, less-restrictive construction "located behind the seats" as "not giv[ing] full meaning to the term '*completely* rearward.'" R&R 67. Moreover, in reexamining the '405 patent in a separate proceeding, the PTAB found significant that certain claims recited "completely rearward" while others did not specify "completely," and inferred that "completely rearward" must mean that "an object must be completely rearward *of every portion of another object*." Shewchuk Ltr. (Feb. 5, 2016) Ex. 1, at 7 (emphasis added). Like the PTAB, the Court finds that the meaning of "completely rearward" can be gleaned from the context of other claims

in the patent.  "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."  *Phillips*, 415 F.3d at 1314.  "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms."  *Id.* (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).  Other claims of the '405 patent show that Polaris knew how to say "completely rearward of *the seat bottom*" if that is what it intended.  For example, claim 17 recites, "the fuel tank being positioned below one of the seating surfaces," and claim 18 similarly claims "[t]he all-terrain vehicle of claim 17, further comprising a battery positioned below the other of the seating surfaces."  Bullard Decl. Ex. C ('405 patent, col. 12, ll. 1-4).  And claim 28 claims a vehicle "wherein . . . all portions of *the seat bottoms* of the side-by-side bucket seats are located outside of the space vertically above the engine."  *Id.* (col. 12, ll. 37-39) (emphasis added).  In addition, the use of the word "completely" contrasts with other claims in which the patentee did not use that term, *e.g.*, "wherein all portions of the engine are located rearwardly of at least a portion of a seat in the seating area."  *Id.* (claim 38, col. 13, ll. 20-22).  The context of the patent shows that "completely rearward" does not mean "completely rearward of the seat bottom, even if under the tilted seat back," but rather means "completely rearward of the rearmost portion of the seating area."

The parties' other arguments and evidence do not overcome the clear import of the term "completely rearward" in the context of the other claims.  The Court agrees with the Magistrate Judge's analysis of the prosecution history cited by the parties, concluding that it does not clearly support either side's position.  R&R 64-67.  Polaris also argues, referring to Figures 2, 4, and 9, that applying a "rearmost edge of the seat back" interpretation would read out the preferred embodiment, because the transmission's output shaft crosses the blue line superimposed by

Polaris on the drawings for purposes of demonstration in this litigation.  Pl.'s Resp. 33, Dkt. No.

226.  Although the Court found that similar annotations of Figures 2 and 9 helped demonstrate

that Defendants' construction of "seating area" as "cab area" was incorrect, because it was easy

to identify the rearmost edge of the "cab area" with respect to the vehicle's rear wheels in the

specification's drawings, *see* R&R 62-63, this exercise is less helpful with respect to the seat

back.  The specification warns that "[a]lthough the drawings represent embodiments of the

present invention, the drawings are not necessarily to scale[,] and certain features may be

exaggerated in order to better illustrate and explain the present invention."  Bullard Decl. Ex. C

('405 patent, col. 3, ll. 24-28).  Polaris' markings thus do not persuade the Court that applying its

construction of "completely rearward of the seating area" would read out the preferred

embodiment.  Polaris also offers the opinion of an expert that the use of "a straight vertical line

. . . to distinguish the front and rear of the seating, irrespective of the contours of the seat that

make up the seating" would "be inconsistent with how a person of ordinary skill in the art would

understand this term."  Moskwa Decl. ¶ 27, Dkt. No. 176.  This conclusory statement does not

outweigh the import of the context of the patent's other claims.  *Phillips*, 415 F.3d at 1318.

Finally, Polaris argued at the *Markman* hearing that a construction like one the Court herein

adopts would be contrary to the purpose of the invention as expressed in the specification.  Tr.

107:17-20, 108:5-17, Dkt. No. 222.  Polaris contended that requiring all of the transmission to be

fully behind the rearmost portion of the seating area would create a "dead area" or "dead space"

that is inconsistent with the goal of "seeking to achieve effective space utilization."  Tr. 90:12-

24.  Polaris did not quote any specific portion of the specification.  Moreover, simply because the

transmission cannot be "under" a tilted-back seat does not mean that *nothing* can be used in that

space.  Finally, even if the construction were contrary to the expressed purpose of the invention,

23

that factor would not be "sufficient to overcome the plain language of the claims." *InterDigital*, 690 F.3d at 1328.

Although the Report and Recommendation concluded that Polaris' "located behind the seats" construction did not give full meaning to the phrase at issue, it determined that there was "no reason to accord the term 'completely rearward' anything other than its plain and ordinary meaning." R&R 67. The parties' dispute reveals the potential that the jury could misunderstand how a person having ordinary skill in the art would interpret "completely rearward." Therefore, the Court construes the phrase "completely rearward of the seating area" in the '405 patent as follows:

| completely rearward of the rearmost portion of the seating area |
| --- |

## C.     Concluding Remarks

To the extent not specifically discussed herein, the Court has considered Defendants' other arguments in support of its objections and does not find them persuasive.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.   The disputed claim terms and phrases are construed as set forth above.

Dated: February 23, 2016

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge